IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

ANGEL A. DIAZ,

      Plaintiff,                    No. 2:05-cv-0692-FCD-JFM (PC)

    vs.

C. ADAMS, et al.,                  <u>ORDER AND</u>

      Defendants.          <u>FINDINGS & RECOMMENDATIONS</u>

_____/

        Plaintiff is a state prisoner proceeding pro se with a civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff claims that defendants violated his rights under the Eighth Amendment by acting with deliberate indifference to his safety needs by disclosing confidential information from his central file.[1] This matter is before the court on defendants' motion for summary judgment pursuant to Fed. R. Civ. P. 56 and on defendants' motion to vacate the dates set for filing pretrial statements, for pretrial conference, and for jury trial.

/////

/////

/////

---

[1] This action is proceeding on plaintiff's second amended complaint, filed March 2, 2006.

1

## SUMMARY JUDGMENT STANDARDS UNDER RULE 56

Summary judgment is appropriate when it is demonstrated that there exists "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

> Under summary judgment practice, the moving party
> always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)).  "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'" Id.  Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. See id. at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id.  In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is satisfied." Id. at 323.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. See Fed. R. Civ. P. 56(e); Matsushita, 475 U.S. at 586 n.11.  The opposing party

1  must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome
2  of the suit under the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248
3  (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir.
4  1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could
5  return a verdict for the nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433,
6  1436 (9th Cir. 1987).

7       In the endeavor to establish the existence of a factual dispute, the opposing party
8  need not establish a material issue of fact conclusively in its favor.  It is sufficient that "the
9  claimed factual dispute be shown to require a jury or judge to resolve the parties' differing
10 versions of the truth at trial."  T.W. Elec. Serv., 809 F.2d at 631.  Thus, the "purpose of summary
11 judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a
12 genuine need for trial.'"  Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory
13 committee's note on 1963 amendments).

14       In resolving the summary judgment motion, the court examines the pleadings,
15 depositions, answers to interrogatories, and admissions on file, together with the affidavits, if
16 any.  Fed. R. Civ. P. 56(c).  The evidence of the opposing party is to be believed.  See Anderson,
17 477 U.S. at 255.  All reasonable inferences that may be drawn from the facts placed before the
18 court must be drawn in favor of the opposing party.  See Matsushita, 475 U.S. at 587.
19 Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to
20 produce a factual predicate from which the inference may be drawn.  See Richards v. Nielsen
21 Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir.
22 1987).  Finally, to demonstrate a genuine issue, the opposing party "must do more than simply
23 show that there is some metaphysical doubt as to the material facts . . . .  Where the record taken
24 as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no
25 'genuine issue for trial.'"  Matsushita, 475 U.S. at 587 (citation omitted).
26 /////

On April 26, 2007, the court advised plaintiff of the requirements for opposing a motion pursuant to Rule 56 of the Federal Rules of Civil Procedure. See Rand v. Rowland, 154 F.3d 952, 957 (9th Cir. 1998) (en banc), cert. denied, 527 U.S. 1035 (1999), and Klingele v. Eikenberry, 849 F.2d 409 (9th Cir. 1988).

ANALYSIS

I. Undisputed Facts

At all times relevant to this action, plaintiff was a state prisoner incarcerated at High Desert State Prison in Susanville, California (High Desert). Plaintiff paroled from prison on May 15, 2008. At all times relevant to this action, all four defendants worked at High Desert.

On June 15, 2000, an inmate was attacked and killed at High Desert by inmates from the Southern Hispanic disruptive group. Prison officials conducted an investigation into the inmate's death. On or about June 28, 2000, plaintiff was interviewed by defendant Handley as part of that investigation. Plaintiff made several statements to defendant Handley during the interview, including that he had not seen the attack, that he was not part of the Southern Hispanic disruptive group, and that based on what other inmates told him he believed correctional staff should have responded to the attack faster. Defendant Handley wrote a confidential memorandum concerning the interview with plaintiff.[2] Plaintiff expressed concern that an interview longer than ten minutes would make him look like a "snitch." The interview lasted less than ten minutes. Plaintiff remained in the general population of D Facility until February 2001, when he was transferred to administrative segregation. While he was housed in the general population in 2000, inmate Banos was his cellmate.

Sometime between the time the memorandum was prepared and December 2003, an individual at High Desert provided the confidential memorandum to the Lassen County District Attorney's Office, which was prosecuting two inmates for the June 15, 2000 murder.

---

[2] Hereafter, defendant Handley's memorandum concerning the interview will be referred to as "the confidential memorandum."

The District Attorney's Office provided a copy of the confidential memorandum to the two attorneys representing the two inmate defendants.

In November 2003, while housed in the B Facility at High Desert, plaintiff was charged with a prison rules violation and transferred to administrative segregation. While he was waiting in a holding cell on the B Facility Yard to be transferred to administrative segregation, plaintiff got into an argument with defendant Adams. During the argument, defendant Adams said, "Shut up or I'll pull your fucking covers." Plaintiff did not see defendant Adams again after the argument.

On December 4, 2003, plaintiff was released from administrative segregation by a classification committee. Defendant Briddle attended the meeting at which plaintiff was released. From December 4, 2003 to December 12, 2003, plaintiff was housed in the general population in D Facility. Sometime between December 4, 2003 and December 11, 2003, inmate Banos sent plaintiff a note warning him not to go to outdoor exercise because inmates planned to kill plaintiff based on their belief he had "snitched." Plaintiff didn't believe Banos was being truthful, and he sent him back a note denying that he was a snitch and declining to stay out of the yard. During the same period, plaintiff participated in outdoor exercise two or three times without incident. On December 12, 2003, plaintiff was assaulted by two inmates who were classified as Southern Hispanic inmates. After the assault, the two inmates told plaintiff that someone had said he had "snitched on our homeys." Defendant Handley was on D Yard when plaintiff was assaulted.

Prior to the attack, none of the four defendants in this action knew that the confidential memorandum had been disclosed to anyone. Until plaintiff was attacked, none of the four defendants believed anyone at High Desert posed a threat to plaintiff. Before December 12, 2003, plaintiff had only one documented enemy at High Desert, an inmate named Almegro who was classified as "Other" and housed in B Yard, and he had no documented enemies in D Yard.

## II. Legal Standards

Under the Eighth Amendment, prison officials have a duty to protect prisoners from violence at the hands of other inmates. See Farmer v. Brennan, 511 U.S. 825, 833 (1994). However, the Eighth Amendment is violated only when the inmate shows that he is incarcerated under conditions posing a substantial risk of serious harm, and that officials displayed "deliberate indifference" to that risk. Id. at 834; see also Leer v. Murphy, 844 F.2d 628, 634 (9th Cir.1988). Deliberate indifference requires proof that a prison official knew of and disregarded the risk. See Farmer, 511 U.S. at 837. "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id. Whether a prison official had the requisite knowledge of a substantial risk is a question of fact. Id. at 842. "[P]rison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." Id. at 844.

## III. Application

Defendants seek summary judgment on the grounds that they were not involved in, or aware of, disclosure of the confidential memorandum, and that they were unaware of any risk of harm to plaintiff as a result of his December 2003 placement back in D Facility. Defendants also seek summary judgment based on qualified immunity.

Defendants have presented evidence, undisputed by plaintiff, that none of them (1) disclosed any of plaintiff's confidential information, including the confidential memorandum, to any other individual; (2) were aware that the confidential memorandum had been disclosed to anyone; or (3) knew of any risk to plaintiff posed by any inmate housed in the D Facility prior to the incident on December 12, 2003.

Although it is not entirely clear, it appears from plaintiff's opposition that his theory with respect to defendants Adams and Briddle is that the release of the confidential memorandum must have been the result of defective procedures at High Desert, and that

defendants Adams and Briddle can be charged with "constructive notice" of those defective procedures. Plaintiff's contention is unavailing.

> The Civil Rights Act under which this action was filed provides:
>
> Every person who, under color of [state law]... subjects, or causes to be subjected, any citizen of the United States...to the deprivation of any rights, privileges, or immunities secured by the Constitution ...shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.  42 U.S.C. § 1983.

The statute plainly requires that there be an actual connection or link between the actions of the defendants and the deprivation alleged to have been suffered by plaintiff. See Monell v. Department of Social Services, 436 U.S. 658 (1978); Rizzo v. Goode, 423 U.S. 362 (1976).  The Ninth Circuit has held that "[a] person 'subjects' another to the deprivation of a constitutional right, within the meaning of section 1983, if he does an affirmative act, participates in another's affirmative acts or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made." Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978).

Moreover, supervisory personnel are generally not liable under section 1983 for the actions of their employees under a theory of respondeat superior and, therefore, when a named defendant holds a supervisorial position, the causal link between him and the claimed constitutional violation must be specifically alleged. See Fayle v. Stapley, 607 F.2d 858, 862 (9th Cir. 1979); Mosher v. Saalfeld, 589 F.2d 438, 441 (9th Cir. 1978), cert. denied, 442 U.S. 941 (1979).

Liability may be imposed on a supervisor under section 1983 only if (1) the supervisor personally participated in the deprivation of constitutional rights or (2) the supervisor knew of the violations and failed to act to prevent them or (3) the supervisor implemented a policy "'so deficient that the policy itself "is a repudiation of constitutional rights" and is "the moving force of the constitutional violation."'" Hansen v. Black, 885 F.2d 642, 646 (9th Cir. 1989); Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989).  However, an unconstitutional policy cannot be proved by proof of a single incident "unless proof of the incident includes proof that it

was caused by an existing, unconstitutional policy." City of Oklahoma City v. Tuttle, 471 U.S. 808, 823-24 (1985).

There is no evidence concerning the circumstances under which the confidential memorandum was produced to the Lassen County District Attorney's Office. Specifically, there is no evidence either that any of the defendants were involved production of the confidential memorandum, or that production of the confidential memorandum was pursuant to an unconstitutional policy implemented by any of the defendants.

Plaintiff apparently seeks to impose liability on defendant McDonald as a chairperson of the institutional classification committee and therefore responsible for making sure that an inmate has no enemies and for ensuring the safety of inmates. There is no evidence that plaintiff had any known enemies in D Facility, or that defendant McDonald disregarded a known risk of harm to plaintiff in connection with the decision to place plaintiff back in D Facility.

Finally, plaintiff contends that defendant Handley saw plaintiff on the D Yard on the morning of December 12, 2003, and, apparently, that defendant Handley should have known about the release of the confidential memorandum. There is no evidence that defendant Handley was aware of any risk to plaintiff as a result of plaintiff's presence on the exercise yard on the morning of December 12, 2003, nor is there any evidence defendant Handley knew the confidential memorandum had been disclosed to anyone.

For all of the foregoing reasons, this court finds no evidence that any of the defendants in this action violated plaintiff's rights under the Eighth Amendment by acting with deliberate indifference to his safety. Accordingly, defendants' motion for summary judgment

/////
/////
/////
/////

should be granted.[3]  In light of that recommendation, defendants' motion to vacate dates will be granted.

In accordance with the above, IT IS HEREBY ORDERED that:

1.  Defendants' November 12, 2008 motion to vacate the dates for filing pretrial statements, for pretrial conference, and for jury trial is granted;

2.  The parties are relieved of the obligation to file pretrial statements;

3.  The pretrial conference on the papers before the undersigned on December 5, 2008 is vacated;

4.  The jury trial set for December 30, 2008 before the Honorable Frank C. Damrell, Jr. is vacated; and

IT IS HEREBY RECOMMENDED that defendants' August 21, 2008 motion for summary judgment be granted.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  The parties are advised that

/////
/////
/////
/////

---

[3] Since there is no evidence to support plaintiff's Eighth Amendment claim, the court need not reach the question of qualified immunity.  The first step of the qualified immunity analysis requires a determination of whether the defendants' "alleged actions are unconstitutional as a matter of law."  Saucier v. Katz, 533 U.S. 194, 201 (2001).  Only if the determination is made that one or more of the alleged acts or omissions were unconstitutional does the court move to the second step of the qualified immunity analysis.  Id. In the instant case, there is no evidence that defendants violated plaintiff's constitutional rights.

1  failure to file objections within the specified time may waive the right to appeal the District

2  Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

3  DATED: November 17, 2008.

_____
UNITED STATES MAGISTRATE JUDGE

12
diaz0692.msj